R. A. FREED & Co., INC., Plaintiff, *v.* " JOHN DOE," Individually and as President of Retail Cloak, Suit, Dress and Fur Salespeoples' Union, Local 107, and Another, Defendants.

Supreme Court, Bronx County, February 21, 1935.

*Bernstein & Bernstein* [*J. Sidney Bernstein* of counsel], for the plaintiff.

*Nemser & Kreis* [*Maurice M. Kreis* and *Hyman Nemser* of counsel], for the defendants.

COTILLO, J. Plaintiff seeks a judgment permanently enjoining the officers, agents and members of the Retail Cloak, Suit, Dress and Fur Salespeople's Union, Local 107, from picketing or authorizing picketing about the plaintiff's store and coercion or intimidation directed against the employees, patrons or other persons having relations with the plaintiff, and from disseminating false information respecting plaintiff's store and from committing acts calculated to harm or embarrass the plaintiff in the proper conduct of its business.

Plaintiff alleges that on or about November 15, 1934, the union demanded of the plaintiff that it sign a contract drawn by the union calling for the plaintiff to change the operation of its store from an open to a closed shop and that it employ only members of local 107 at rates of compensation and terms and conditions of employment specifically set forth in the contract. Upon its refusal to sign this contract the union has patrolled the streets in front of and surrounding plaintiff's store by a large number of pickets, which has caused such great crowds to collect in front of the plaintiff's store as to interfere with the free ingress and egress in and from the store and with all traffic in front of the store, and these pickets have interfered with persons desirous of entering the store and also with plaintiff's salespeople. Furthermore, the union has caused its pickets to carry signs and announcements which falsely declare that the salespeople in plaintiff's store are on strike, and it has also caused the pickets to walk up and down the streets in front of the store shouting at the top of their voices, " The salespeople in this store are on strike." Pickets have also patrolled the streets in front of the plaintiff's store carrying signs, with the following legend: " Freed's employees are working under inhuman and un-American conditions. They are unfair to Union labor," thus causing persons desirous of patronizing plaintiff's store to refrain from so doing. Plaintiff claims that because of these actions on the part of the union and its pickets, disturbances have occurred in front of the store and the police department of the city of New York has been

compelled to place officers and patrolmen in front of the store to avoid violence and serious disturbances, causing crowds to collect and blocking the entrances and exits. Plaintiff further claims that in truth and in fact its employees are not on strike and are continuing in its service and are fully satisfied with the conditions of their employment, and that the statements of the union are wholly false, misleading and malicious.

Plaintiff is a retail department store specializing in the sale and distribution of women's wear, and has been in existence about thirty-five years, employing an average of one hundred and fifty people, many of whom have been in its employ a long time, some even about twenty-five years. There is no question from the evidence but that the plaintiff is paying salaries to its employees in excess of the labor provisions of the Retail Stores Code and has otherwise complied with the provisions of the NRA. Up to about May, 1934, no question of unionism or non-unionism was raised by any of plaintiff's employees. In that month, however, the defendant union succeeded in inducing two of plaintiff's employees to join it and up to the present time a total of five members of plaintiff's staff have joined this union. Before the present difficulty plaintiff and its employees had never had any labor trouble.

In November, 1934, Nat Levine, a business agent of the defendant union, called upon plaintiff and demanded that it enter into an agreement with the union, under which plaintiff's employees would be compelled to join the defendant union or else suffer discharge. The proposal was nothing more or less than a contract compelling plaintiff to operate what is known as a closed shop. Defendant's proposed agreement contained a provision for a closed shop in its first paragraph, as follows: " The employer agrees to employ only members in good standing of the Union." While plaintiff refused to accept the closed shop, it offered to enter into an agreement with the union if the question of the closed shop was eliminated. The defendant, however, refused to consider any negotiation with plaintiff except upon the principle of a closed shop. The question before this court is whether or not the defendant union should be permitted, either by the methods of intimidation adopted or even by peaceful picketing, to compel plaintiff's employees to join the union or to compel the employer to make membership in this union a prerequisite to continued employment of its workers. The proof in the record is that outside of the five who joined the union, the balance of the employees seem to have no desire to join this union.

The defendants assert the right to picket plaintiff's store for the purpose of preserving and maintaining a wage scale, better working

conditions, increasing the number of defendant's members, and unionizing an entire trade or business, and they further claim that such purposes are lawful.

Defendants do not deny that their principal purpose was to effect a closed shop arrangement with the plaintiff. In fact, their attorney, Mr. Nemser, testified that he told Mr. Freed that the question of a closed shop was of paramount importance; and Mr. Levine testified that when Freed objected to the provision of the contract for a closed shop, he told him, " *There is no sense of going any further unless you do admit to recognize the Union, or get at the basis of recognizing the Union.*" They admitted that they had carried the signs referred to and made vocal announcements, but denied that they had resorted to threats or intimidation, and pointed out that there had been no arrests in connection with their picketing. The main question involved here is whether or not a union can compel an employer of salespeople to operate a closed shop.

The plaintiff is in a little different situation from the ordinary employer of labor. Plaintiff's business is that of selling the public articles which it must be induced to buy not only by means of the quality of the goods, but by reason of the personality and other elements which constitute the selling ability of its employees.

A few days after plaintiff refused to meet defendant's demands for the closed shop, the five employees who were members of the union were called out on strike, and mass picketing methods were instituted by the defendants. At one time as many as twenty pickets paraded in front of the store with signs over their heads, shouting continuously that the plaintiff's salespeople were on strike, the signs bearing the following inscriptions: " The salespeople of Freeds are on strike for humane conditions." " Freeds' employees are working under inhuman and un-American conditions." " All the other salespeople of Freeds are on strike to obtain humane conditions." " Freeds' employees are striking for living wage. Please don't patronize Freeds." " Freed pays his employees 21 cents an hour." " Freed pays only 21 cents an hour."

The case of *Exchange Bakery & Restaurant, Inc.*, v. *Rifkin* (245 N. Y. 260) marks out the legitimate arena of labor union activity in this direction. There the court said (at pp. 263, 264): " Even if the end sought is lawful, the means used must be also. ' Picketing ' connotes no evil. It may not be accompanied, however, by violence, trespass, threats or intimidation express or implied. No crowds may be collected on or near the employer's property. The free entrance of strangers, customers or employees may not be impeded. There may be no threats — oral or written, false in fact, yet tending to injure the employer's business. We here make

no attempt to enumerate all the acts that might make picketing illegal. Doubtless there are others. When the situation in a particular case comes to be reviewed by the courts there will be no difficulty in drawing the line between acts permissible and acts forbidden."

The court further says (at p. 269): "It is quite true that where unlawful picketing has been continued; where violence and intimidation have been used and where misstatements as to the employers' business have been distributed, a broad injunction prohibiting all picketing may be granted. The course of conduct of the strikers has been such as to indicate the danger of injury to property if any picketing whatever is allowed."

In *Nann* v. *Raimist* (255 N. Y. 307) the court says (at pp. 314, 315): "'Where unlawful picketing has been continued; where violence and intimidation have been used and where misstatements as to the employers' business have been distributed, a broad injunction prohibiting all picketing may be granted. * * * The course of conduct of the strikers' is then 'such as to indicate the danger of injury to property if any picketing whatever is allowed.'"

On the trial defendants urged that since they had eliminated unlawful practices under orders *pendente lite* previously granted, plaintiff was not entitled to a judgment for injunctive relief. Such contention is erroneous. The relief to which plaintiff is entitled is measured by the relief to which it was entitled at the date of the commencement of the action. This is as true of injunction actions as of all other actions.

Moreover, the relief won by plaintiff under the orders *pendente lite* was a *temporary* relief forced upon the defendants. That relief can last only until the entry of a judgment. Unless the judgment is broad enough to restrain the abuses that were concededly practiced by the defendants at the time of the commencement of the action, there is no assurance that these abuses will not be renewed.

As the Court of Appeals said in *J. H. & S. Theatres* v. *Fay* (260 N. Y. 315): "In spite of evidence that long before the case came to trial the defendant had ceased to employ these canvassers, the court was not bound to accept belated repentance or belated caution as a sufficient guaranty that the plaintiff's business would not be injured in similar fashion in the future. It might, in its discretion, grant protection by an injunction broad enough to achieve that purpose (p. 319).

"A broad injunction against all picketing has been sustained where there was a finding that picketing had been conducted unlawfully because accompanied with violence or misrepresentation" (p. 321).

In the case at bar the conduct of defendants would in itself justify the refusal to permit any picketing. While decisions of the courts justify the prohibition of all picketing, where picketing has been accompanied by unlawful activities, there is in this case a broader ground for a denial of right of further picketing.

Retail stores large and small achieve their success and hold their patronage, *first*, by the quality and reasonable prices of their merchandise, and *second*, by the character of their service. Really successful stores are the extreme development and expression of personal service. Effective store operation depends in large measure on complete administrative freedom, and the flexible use of a diversified staff. Classification, regimentation, standardization and all the other limitations resulting from the closed shop would tend to produce inefficiency in the character of the service, a loss of patronage, and consequent waste. This in turn would threaten the existence and success of the very institution upon which the welfare of the employees depends.

Employment within the field of retail distribution affords an opportunity for individual enterprise possibly greater than that in any other craft. Those talents which make for success and individual progress are elusive, and yet real and demonstrable only under reasonable liberty of individual action, so that the regimentation of a closed shop would act as a deterrent to the initiative and ambition of the employees. A person of ambition, imagination, industry and talent would certainly be restrained from the expression and capitalization of those qualities under the limitations of a closed shop and union dictatorship.

Unionization of labor in its most effective form of the closed shop should be restricted to those fields in which the services of the employees have some degree of standardization, such as bricklayers, longshoremen, chauffeurs and similar industries. It may be pointed out that trade unionism of that type has been the result of the growth of a class of manual workmen working for a wage for employers who provide the materials and the instruments of industry. (27 Ency. Brit. [11th ed.] p. 150.) Labor may thus be divided into two classes, in the first of which fall industries of the above classification and in the second of which a personal equation would enter. I do not believe that citizens offering a type of service such as that of professional men, including doctors, lawyers or dentists, could be successfully organized into unions of the closed shop character, which will dictate the sale of their service to the exclusion of the desires of the employer or the satisfaction of the public at large. The value and effectiveness of their services depend upon personality, appearance, charm, distinction, ambition

and imagination. Surely a person engaged in selling must have some or all of these qualifications. The talents which make for success and individual progress while not always clearly definable, are yet discernible to the employer. To compel the selection of salespeople to depend upon the whim or rules of a labor union, as would be the case under a closed shop, would result in a strangulation of all effort on the part of such stores to develop and maintain an efficient organization for the purpose of satisfying the desires of the purchasing public.

Besides, in the field of retail distribution, most concerns experience two periods of highly increased seasonal employment during the course of a year; in the Christmas season the working forces are usually doubled; in the spring forces are again inflated. These periods of increased demand afford employment to certain additional employees who as a rule are only seasonal or casual workers. Most often they are young people filling in periods of their education with temporary employment, or older people, particularly women, who augment family budgets by their ability to accept short term employment. That these people should be subjected to the necessity of joining a union and paying union dues for the privilege of working in a store for temporary periods seems oppressive.

The National Recovery Act as at present constituted does not upset the present law that *bona fide* labor unions have the right to agitate peacefully for the closed shop. I agree with that policy that one may peacefully agitate for a closed shop, but I add that such efforts must be limited to appropriate lines of endeavor.

I have no quarrel with the desire of employees, whether they belong to the mechanical labor class or the so-called white collar class, to join for mutual advantage. But I cannot approve the usurpation by an organization of the latter class of the prerogative to eliminate the direct right of the employer to select his workers, and the indirect right of the public to control such selection.

Courts in deciding a case must achieve a result in accord with the equities of the parties before it in the particular dispute. To follow precedents blindly would work a hardship which would defeat the very purpose which the court has undertaken, namely, to do equity between the parties before it. We cannot be blind to the fact that outside of a labor union's right to collective bargaining, etc., there is still the public to be considered and also the individuals whom they intend to unionize.

The evidence before me bears out the allegations in the complaint that defendant union has been guilty of acts of intimidation which are a ground for enjoining all picketing. It also justifies, from the nature of plaintiff's business, a decision to the effect that defend-

ant should be enjoined from all acts which would force a closed shop upon the plaintiff, or from persuading employees to join the union by intimidation or coercion. While there is nothing to hinder defendant union from seeking to increase its membership, such efforts must be the ordinary peaceful ones, and not coupled with picketing and the implied threat that such conduct carries with it.

There will be judgment for the plaintiff. Submit findings and judgment on notice. 